280 So.2d 130

## In re MARSHALL COUNTY BOARD OF EDUCATION

v.

## STATE TENURE COMMISSION for the State of Alabama et al.

### Ex parte Marshall County Board of Education.

### SC 110.

Supreme Court of Alabama.

Feb. 8, 1973.

Rehearing Denied March 8, 1973.

T. J. Carnes, Albertville, for petitioner.

Lusk & Lusk, Guntersville, for respondents.

Louis B. Lusk, Sp. Asst. Atty. Gen., for the State Tenure Comm., respondent.

MERRILL, Justice.

Petitioner seeks a review by certiorari of the judgment of the Court of Civil Appeals which affirmed a judgment of the circuit court denying petitioner's petition for mandamus.

This is a companion case and a sequel to Marshall County Board of Education v. State Tenure Commission, 291 Ala. 273, 280 So.2d 114, this day decided. In that case, the Board of Education (hereinafter called the Board) sought to transfer Arther Baugh from the principalship of Albertville High School to teacher and coach of another high school in the county under the transfer provisions of Tit. 52, § 355, Code 1940, as amended. Baugh appealed to the State Tenure Commission (hereinafter called the Commission) and the Commission held that the Board's action was null and void on August 7, 1970.

On August 13, 1970, the Board passed a resolution to cancel Baugh's contract under Tit. 52, § 358, as amended, and after proper notice and hearing, Baugh's contract was cancelled. He appealed to the Commission and it decided that the cancellation was the result of political or personal reasons. The Board sought review in the circuit court by mandamus; the relief sought was denied; the Board appealed to the Court of Civil Appeals, where the judgment of the circuit court was affirmed.

## I. SCOPE OF REVIEW

Petitioner cites cases in which this court reviewed the evidence taken before the county board in transfer and cancellation of contract cases. It is so stated in State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689; Autry v. Board of Education of Randolph County, 285 Ala. 617, 235 So.2d 651, and State Tenure Commission v. Madison County Board of Education, 282 Ala. 658, 213 So.2d 823.

■ But all of those cases were decided before the Court of Civil Appeals was created, effective October 1, 1969, by Act No. 987, Acts of Alabama 1969, p. 1744. That Act gives exclusive appellate jurisdiction of cases like the instant one to the Court of Civil Appeals (§ 3 of the Act) and § 32 of the Act and our Supreme Court Rule 39, as amended, provide for review in this court by certiorari and the mechanics of that limited review. Therefore, we do not review all the evidence taken before the county board in such cases. That duty is now on the Court of Civil Appeals.

■ While on the subject of scope of review, we answer a contention of the Tenure Commission made in brief where it is stated, "we think there are good reasons for allowing the Tenure Commission a somewhat broader scope of review than is ordinarily permitted to Courts reviewing decisions of administrative agencies." We cannot agree.

The Legislature set the scope of review. In transfer cases of tenured teachers, the scope of review by the Commission is "whether such action was taken for political or personal reasons" and that action was not arbitrarily unjust. Tit. 52, § 357. In cancellation of contract cases, the scope of review is the same, § 360, although the "political or personal reasons" is an amendment to § 358. No appellate or trial court in this state has the right to broaden the scope of review of the Commission. Section 360 states, "On said appeal the commission will consider the case on the record of the proceedings before the said board and the evidence as recorded at such hearing."

That is the universal rule relating to appeals in this state where the case is not de novo but reviewed on the record made in the court below. The only evidence before the Commission is that which was taken before the Board and information from no other sources should be sought or considered.

## II. POLITICAL OR PERSONAL REASONS

Title 52, § 358, as amended, provides:

"Cancellation of an employment contract with a teacher on continuing serv-

ice *status* may be made for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause; but cancellation may not be made for political or personal reasons."

The pertinent part of the decision of the Commission was:

"After reviewing the record and hearing the arguments of counsel, the Commission finds the following:

"The Commission is of the opinion that the cancellation of Mr. Arthur Baugh's contract by the Marshall County Board of Education as Principal of Albertville High School was motivated by political or personal reasons, and is therefore in conflict with Title 52, Section 358, Code of Alabama 1940.

"The Commission makes no finding as to the competency or incompetency of Mr. Baugh, neither does the Commission make any finding as to whether or not Mr. Baugh was guilty of insubordination as charged by the Board."

The words "political" and "personal" have many different meanings. The definition of "personal reasons" as used in the statute under consideration, cited in 32 Words & Phrases, Personal Reasons, Pocket Part, p. 63, is that which the Court of Civil Appeals retracted in the opinion presently before us for review. We make no attempt to give the various definitions and distinctions found in the dictionary and court decisions. We think it is generally understood among laymen as well as lawyers what the Legislature meant when it added the provisions in §§ 357 and 358 that the transfer or cancellation of the contract should not be made "for political or personal reasons."

■ We think the political reasons the Legislature had in mind in the use of the words in these statutes were that no tenured teacher could be transferred or discharged on the ground that the teacher did not belong to the same political party that a majority of the board members belonged, or that the teacher had voted for a political opponent of the board, or that the teacher had or had not professed a political preference in any political race, or that the teacher had become a candidate for public office, or for any similar political activity we have not specifically mentioned. In short, the Board cannot indirectly punish a teacher for that teacher's political activity or that teacher's refraining from political activity.

It is common knowledge that whenever anyone on the public payroll is involuntarily transferred to another job or discharged, or even when charges are preferred, the inevitable response is that the reason is "politics." And the claim of politics becomes more shrill when the hirer and firer is a body of elected officials and that body has to take its action by a majority vote.

■ Under our statutes, no tenured teacher can be transferred or discharged without a majority vote of the Board of Education, and that holding cannot be affirmed or rejected by the Tenure Commission except by majority vote. But those mere facts do not make either body's action political in the sense it is used in the statute.

■ We think the word "personal" as used in the tenure statute denotes a personal bias, prejudice, or antipathy on the part of one or more of the Board members toward the teacher; and when it influences a Board member's vote when that member is exercising a quasi-judicial function in voting on a transfer or cancellation. Personal is in contrast with judicial; it characterizes an attitude of extrajudicial origin.

■ There are two sides to the "political and personal reasons" coin. If a ten-

ured teacher, regardless of how incompetent he may have become, decided that he did not want his contract cancelled, he could once a year publicly criticize the actions of the Board (political) and castigate the integrity of the Board members (personal) and always show that any attempt to get rid of him was for "political and personal reasons," but we do not think any Tenure Commission or any court would set aside a cancellation of his contract on that showing if, in fact, he was incompetent.

The Court of Civil Appeals quoted at length from State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689, to support its holding that a tenured teacher cannot have his contract cancelled by the Board if the Superintendent of Education has political or personal reasons for wanting the teacher's contract cancelled, but no evidence is listed that the Board acted for those reasons. We do not think the *Fairfield* case so holds. In that case, the teacher sought to show that the Superintendent had a personal dislike for her and refused to let her take a test when he had permitted other teachers to take it at a subsequent date from the date originally set. The Superintendent also refused to answer questions which could have shown bias or prejudice against the teacher. This court held that the hearing "served the purpose of enabling the board of education to hear both sides of the case" and that the teacher was entitled to have the Superintendent answer these questions. *"His answers thereto could have materially affected the final decision of the board of education."* (Emphasis supplied.) But the teacher was prevented from presenting evidence tending to show that the proceedings to cancel her contract, which was cancelled because of insubordination, were motivated by personal reasons. Certainly, she should have been permitted to show, if she could, the personal feeling of the Superintendent toward her. But unless she could show a carry-over of that dislike to the members of the board, she would not be able to attribute political or personal reasons to the board, the only people who could cancel her contract for insubordination.

■ We cannot agree with petitioner that the words in the last clause of § 358, "but cancellation may not be made for political or personal reasons" are meaningless surplusage. We have tried to show that the Legislature put them there for a purpose, and they should be considered and applied, but as we shall show later, they are not so dominantly important as to nullify all Board actions.

■ We think the Legislature intended that no teacher should be transferred or have his contract cancelled if his transfer either was grounded exclusively or primarily on political or personal reasons.

## III. VALIDITY OF BOARD'S FINDINGS

The general administration and supervision of the public schools of each county is vested in the county board of education. Tit. 52, § 62.

■ Only the employing board of education has the authority to cancel the contract of a tenured teacher, and that only after due notice and a hearing. Tit. 52, § 359, as amended.

The action of the employing board shall be final in its cancellation of a teacher's contract provided such action was in compliance with Chapter 13, Code 1940 (§ 351 et seq.) and no appeal is taken within fifteen days. Tit. 52, § 360.

In Woods v. Board of Education of Walker County, 259 Ala. 559, 67 So.2d 840, this court said:

" * * * Where a board, such as the board of education of a county, is created for the purpose of carrying a law into execution, all legal intendments are indulged in favor of the orders of such board and those orders will be upheld unless their invalidity is clearly shown by those who challenge them, the legal

**288**

presumption being that such orders are reasonable and valid and were made upon proper evidence. * * *"

█ There is no contention that the statutory procedures were not complied with, and the record shows that there were three volumes of recorded testimony, with over sixty witnesses testifying before the Board. After the hearing, the Board cancelled Baugh's contract on the grounds of incompetency and insubordination, two grounds in § 358 as grounds for cancellation. The appeal to the Commission is not for a de novo trial; and the only question for decision by the Tenure Commission was, since the action was in compliance with the chapter on Teacher's Tenure, whether the action of the Board was "arbitrarily unjust." § 360.

### IV. THE TENURE COMMISSION ORDER

█ We have previously quoted the pertinent part of the order of the Commission. In short, it held that the cancellation of Baugh's contract "was motivated by political or personal reasons," but went further and stated that it "makes no finding as to the competency or incompetency of Mr. Baugh" or whether he "was guilty of insubordination as charged by the Board."

We think the order in its present form was unfair to both sides. It was unfair to the Board because no reason is given why the Board's decision was unjust. Even though the Board is the only body which can hire, transfer or discharge tenured teachers, and although it is the only body charged with administration and supervision of schools, the determination of the educational policy of the county and the prescribing of rules and regulations for the conduct and management of the county schools (§§ 62, 73), and it held a long hearing in this case, the only explanation given by the Commission is that the cancellation of Baugh's contract "was motivated by political or personal reasons." It is not stated whose political or personal rea-

sons and under the order those reasons must be attributed to the Board, but at the same time, there is a strong inference in the opinion of the Court of Civil Appeals that there was no evidence of political or personal reasons on the part of any member of the Board.

The order is also unfair to Baugh. It states that the Commission makes no finding as to the charges of incompetency or insubordination which the Board found to be supported by the evidence adduced at the hearing. Although the Commission's order had the effect of permitting Baugh to retain his job, there is, inferentially, the stigma of proven charges of incompetency and insubordination which the Commission expressly refused to pass upon. If either or both were not sustained by the evidence, the Commission should have so stated.

We also note that the order is inadequate because the case may be, as here, ultimately reviewed in this court. The petitioner charges in brief: "There was absolutely no testimony that any member of the Marshall County Board of Education was motivated by political or personal reasons in proposing the cancellation of Arthur Baugh's contract. Not only was there no testimony to that effect, there was not even a charge." We recall no refutation of that statement in any of the briefs filed here on behalf of Baugh, the Commission or amicus curiae.

The order of the Commission sheds no light on what the political or personal reasons were, to whom they were attributed, their background, what motivated whom, or any other pertinent information. The only reason given is copying the general words of the statute with no comment or explanation.

The judgment of the circuit court does not mention any reasons; it merely found "that the action of the State Tenure Commission complied with the provisions of said Chapter 13 (Tit. 52) and that the decision of the Commission of December 3, 1970, was not unjust." (This statement is in no-

wise critical of the circuit court. It did and said all it was required to do if it was going to concur with the finding of the Commission.)

The Court of Civil Appeals affirmed the judgment of the circuit court, but we are still unapprised of what or whose political or personal reasons motivated the cancellation of the contract. Owing to our limited review, already noted, we have not read the proceedings before the Board, but we have read the two hundred pages of narrative testimony in petitioner's brief. Even so, we have not referred to that testimony because very little of it is contained in the opinion of the Court of Civil Appeals.

█ The point we make here is that nowhere in any finding or opinion of the Commission, the circuit court or the Court of Civil Appeals is there any information as to what the political or personal reasons were that caused the action of the Board to be overturned. Since the appellate review of action taken by the Commission is by mandamus to the circuit court, § 361, and certiorari to this court (Act No. 987, cited supra), it is imperative that some specificity be given by the Commission to support its reversal of the findings of the only trier of facts, the Board of Education. "Personal or political reasons" is too general and too indefinite and it does not give the courts sufficient information to decide the case on its merits. We know there were three volumes of testimony taken, but nowhere are we presented with any evidence in all that testimony that the cancellation of Baugh's contract was due to any specific political or personal reason. Whatever the political or personal reasons were, or who held them, should have been stated so that all school boards could learn what political or personal activity is not allowed and to keep it from happening again.

█ Another matter merits attention. We have held that the purpose of the teacher tenure law is to insure teachers, as there defined, some measure of security and to secure permanency in the teaching force; and are to be read into all contracts entered into between school boards and teachers. Madison County Board of Education v. Wigley, 288 Ala. 202, 259 So.2d 233, and cases there cited. The underlying purpose of providing this security and permanency is the welfare of the pupils, and the public interest in having competent personnel in education.

The highest interest of the public in education is that the pupils have competent teachers and administrators. Here, Baugh was charged with incompetency and much evidence was taken on that charge. We cannot understand why the Commission did not pass on his competency. If a teacher is incompetent, he should be removed. Not many tenured teachers become incompetent, but a few do. Surely, the welfare of the pupils and the public interest should outweigh political or personal reasons if, in fact, the teacher is incompetent.

We are not to be understood as holding or intimating that Baugh is incompetent. But the Board, following a full hearing, found that he was. The same law which names incompetency as a ground for cancellation of a contract allows an appeal to the Commission. We do not think that the Legislature intended that the Commission should exercise its veto power over the Board's action without giving a more specific reason than the words of the statute, i. e., "the action of the Board was arbitrarily unjust" or "the transfer or cancellation was the result of political or personal reasons," especially when the charge of incompetency was sustained by the Board.

The Commission should, when reversing a decision of the Board which follows the statute, state sufficient reasons it has found from the evidence to justify its action so that on final review by this court, which does not have access to all the evidence, can still pass upon the question of whether the Commission's action is unjust, Tit. 52, § 361.

If the Commission approves the finding of the Board, a sufficient reason would be that the evidence sustains the action of the board of education and it is not arbitrarily unjust. There is no reason to readvertise the deficiencies of the teacher if he is to be discharged, but we must insist on some reasonable statement based on the evidence of reasons for the overturning of the action of the Board. And where the charge of incompetency is sustained by the Board, a positive finding, one way or the other, on that charge and the reasons why, should always be made.

It follows that the judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court with directions to reverse the judgment of the circuit court and remand the cause to the circuit court to direct that court to remand the cause to the Tenure Commission with directions to make definite findings with reasons on the charges of incompetency and insubordination, and if the Commission determines that the cancellation of the contract was for political and personal reasons, then whose and what political reasons and whose and what personal reasons.

Reversed and remanded with directions.

COLEMAN, HARWOOD, BLOOD-WORTH, McCALL and FAULKNER, JJ., concur.

HEFLIN, C. J., concurs in the result.

MADDOX, J., concurs specially.

MADDOX, Justice (concurring specially).

I concur that the judgment of the Court of Civil Appeals must be reversed because the order of the State Tenure Commission is ambiguous. If I could read the order of the Tenure Commission as stating that the *sole* reason for Arthur Baugh's dismissal was because of "political" or "personal"

reasons then I would affirm its actions as did the Circuit Court and the Court of Civil Appeals.

From a reading of the order of the Tenure Commission, however, I cannot say whether the Commission determined that Baugh was guilty of the charges of incompetency and insubordination. The Commission should clear up this ambiguity.

I do not personally think that the Commission needs to specify in great detail why it makes a particular determination and, in this, my views are at some variance with the majority, but I do agree that the determination here is insufficient.

Although I concur that the cause must be sent back, I find myself in disagreement with some of the views expressed in the majority opinion on the scope of review of the State Tenure Commission.

The majority says that the Tenure Commission does not have a broader scope of review than is ordinarily permitted to courts reviewing decisions of administrative agencies. I believe the Legislature intended otherwise.

In State Tenure Commission v. Madison County Board of Education, 282 Ala. 658, 213 So.2d 823 (1968), this Court commented specifically on the legislative intent in establishing the State Tenure Commission as follows:

"This appellate aspect of the tenure teacher law, that is the State Tenure Commission, to which a review may be had of decisions of local school boards, is a covenant made by the people of Alabama with tenure school teachers, as expressed by legislative enactment—Chapter 13 and Chapter 13A, Title 52, Code of Alabama 1940. Thus, there now exists a 'tenure' law and *an independent appellate forum*. The legislature, no doubt, felt it was necessary to have an appellate forum for tenure teachers, *so that they could be removed from the heat and the aggressiveness and pressures sometimes generated in intra-community or intra-county politics*. This

'tenure teacher' law establishes a 'means' between two extremes—the extreme of absolute local control and the other extreme of absolute freedom from any local control.

"* * * It is clear that the State Tenure Commission, as it now exists, expresses the intent of the legislature to protect the right of tenure teachers, and to preserve to them a certain degree of academic freedom, and freedom from harassment that is sometimes caused by intra-community political conflict; and at the same time reserve to local authorities, through the local county school boards and local school officials, such as school trustees, school principals and school superintendents of education, proper authority within the area of their particular functioning."

While the matter is pending before the Tenure Commission it is still in the administrative process.

The proceedings upon the review of an administrative determination by a superior administrative tribunal naturally depends upon the statutory grant of authority. Although administrative review is in some respects analogous to an appeal in the judicial process, I believe that there are basic and fundamental distinctions between the process of internal review administratively and that of appellate review judicially. See 2 Am.Jur.2d, Administrative Law, § 546, p. 354. Consequently, I believe the Alabama Legislature gave the Tenure Commission the right to review the entire record before the board without indulging in any presumptions of the correctness of the findings and conclusions made by the board and to arrive at contrary conclusions on the same facts, if the commission is convinced from the record that the board was "arbitrarily unjust" or its action was based on "political or personal reasons." When the majority defines the scope of review as being limited to the record before the board, that is correct. The Commission cannot try the matter de novo. How-

ever, I believe the Legislature intended that the Tenure Commission could re-examine the facts which were before the board and arrive at a different conclusion.

There is another reason why I think the Legislature intended that the Tenure Commission should have a somewhat broader scope of review. As this Court said in State Tenure Commission v. Madison County Board of Education, supra, the Tenure Commission was set up as an *independent appellate forum*. By providing for an independent examination of the facts, even though the hearing is not de novo, the Legislature, I believe, intended to accord an aggrieved teacher a forum where the teacher could plead his case anew, albeit on the same evidence. The scope of review, I propose, would seem to be fairer to the teacher, who for the first time is appearing before *an independent forum*.

To read the statute as I propose would seem to help remove a possible objection that some teacher might raise that the school board acts as both the prosecutor and the judge, a procedure which has been criticized. See 1 Am.Jur.2d, Administrative Law, § 78, p. 873. I make no determination here whether present statutory procedures, as they have been construed by the majority, accord procedural due process. I do call the attention of the Legislature to the fact that the Supreme Court of the United States has held that when the rights of public employees are involved, state and federal governments, even in their internal operations, do not constitutionally have the complete freedom of action enjoyed by the private employer. See Cafeteria Workers, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). I merely point out the trend. I do not adopt it or reject it.

I recognize that the state has a very valid and substantial interest to protect also. The school board has the responsibility to manage the school system. It has a legiti-

mate interest in the education of the young people in its charge. I think the Legislature recognizes this interest by providing a method by which the school board could rid itself of incompetent personnel. But I believe the Legislature intended to give the Tenure Commission a rather broad scope of review to make sure the board was not arbitrarily unjust in its decision to remove a teacher.