This is a teacher tenure case.
The contract of a teacher with continuing service status (tenure) under Title 52, Sec. 352, Code of Alabama (1940) (Recomp. 1958), was cancelled by his employer, Sumter County Board of Education. The teacher (Levon Puckett) appealed the decision of the Board to the Alabama State Tenure Commission as permitted by Title 52, Sec. 360. The Commission found the evidence presented to the Board insufficient to support the reasons given for the cancellation and thus arbitrarily unjust. The Board was ordered to reinstate the teacher to his former position.
The Board sought mandamus against the Commission in the circuit court as provided by Title 52, Sec. 361. By order of January 24, 1977, the court denied mandamus. In its judgment, the circuit court stated that in accordance with the recent decision of the Alabama Supreme Court in the case of AlabamaState Tenure Comm. v. Mt. Brook Bd. of Educ., 343 So.2d 522
(Ala. 1977), the limit of its statutory review in the case was to determine if there was sufficient evidence to support the decision of the Commission that the action of the Board was arbitrarily unjust. Finding that there was sufficient evidence to support the decision of the Commission mandamus was denied. The Board appealed.
The appeal before this court is from the order of the circuit court denying mandamus. The scope of our review is the same as that of the circuit court in its consideration of the petition for writ of mandamus.
Until the recent decision by the Supreme Court in the case ofAlabama State Tenure Commission v. Mt. Brook Bd. of Educ.,supra, we considered that it was the statutory duty of the circuit court to look at the decision of the Commission in light of the record brought to the Commission from the hearing before the board and determine if the Commission had exceeded its statutory scope of review. We had considered that a decision by the Commission reversing the action of the Board as arbitrarily unjust when that action was supported by reasonable and substantial evidence in the record, exceeded the statutory authority of the Commission and such decision could be set aside by writ of mandamus.
We had considered that the contention of counsel for the Tenure Commission that the scope of review of the Commission should be broadened had been answered by the Supreme Court in the case of Marshall County Bd. of Educ. v. State TenureCommission, 291 Ala. 281, 280 So.2d 130 (1973). In that case, as in the case presently before us, it was contended by counsel that the Commission should be permitted a broader scope of review than is ordinarily permitted to courts reviewing decisions of administrative agencies. That contention was approved by the specially concurring justice who stated that the Tenure Commission had
 ". . . [T]he right to review the entire record of the proceedings before the Board without indulging in any presumptions of the correctness of the findings and conclusions made by the board and to arrive at contrary conclusions on the same facts, if the commission is convinced from the record that the Board was `arbitrarily unjust'. . . . The legislature intended that the Tenure Commission could re-examine the facts which were before the board and arrive at a different conclusion." 291 Ala. at 291, 280 So.2d at 138.
This contention of counsel and the justice was rejected by the majority when it said: *Page 1135 
 "The Legislature set the scope of review. . . . No appellate or trial court in this state has the right to broaden the scope of review of the Commission. Section 360 states, `On said appeal the Commission will consider the case on the record of the proceedings before the said board and the evidence as recorded at such hearing.'
 "That is the universal rule relating to appeals in this state where the case is not de novo but reviewed on the record made in the court below." 291 Ala. at 285, 280 So.2d at 133.
Under the heading of "Validity of Board's Findings", the court quoted from its decision in the case of Woods v. Bd. ofEduc. of Walker County, 259 Ala. 559, 67 So.2d 840 (1953) the following:
 "Where a board, such as the board of education of a county, is created for the purpose of carrying a law into execution, all legal intendments are indulged in favor of the orders of such board and those orders will be upheld unless their invalidity is clearly shown by those who challenge them, the legal presumption being that such orders are reasonable and valid and where made upon proper evidence." 259 Ala. at 561, 67 So.2d at 841.
The court then said:
 "The appeal to the commission is not for a de novo trial; and the only question for decision by the Tenure Commission was, since the action was in compliance with the chapter on Teacher's Tenure, whether the action of the Board was `arbitrarily unjust.' § 360." 291 Ala. at 288, 280 So.2d at 135.
We have considered in light of these statements that it was settled that it was beyond the power of the Tenure Commission to re-examine the evidence heard by the Board without any presumption of its correctness, to weigh such evidence, judge its credibility, arrive at an entirely different factual conclusion and not be subject to mandamus if its contrary conclusion is supported by sufficient evidence (whatever constitutes a sufficiency in such an instance).
All of our considerations of the status of the law were changed by the decision of the court in Mt. Brook. Though the majority opinion did not refer to nor overrule what we have herein shown to have been said by the court in Marshall County, we are constrained to believe that the effect of Mt. Brook was to overrule such portions of that decision and to adopt the view expressed in the special concurring opinion.
The learned trial judge in this case was clearly of the same belief.
The court in Mt. Brook pointed out that if all procedural requirements of the statute are followed the only further inquiry which may be made by the circuit court is whether there is sufficient evidence before the Commission to support its conclusion that the decision of the Board should be reversed. If there was sufficient evidence to support such conclusion, then the decision of the Commission must be affirmed as not unjust.
As we understand the decision, the circuit court may not view the evidence though it may be vast, credible, preponderant and convincing, clearly supporting the conclusion of the Board. The court may only look to the record to determine if there is "sufficient" evidence to support a contrary conclusion reached by the Commission. Such "sufficiency" is apparently weighed neither against the usual legal presumption of correctness accompanying the finding of the body who heard the testimony and saw the witnesses nor the preponderance of the evidence.
We can reach no conclusion from Mt. Brook other than that it authorizes the Commission to retry the case on the record and reach its own conclusion of fact. If it reaches an opposite conclusion of fact from the Board, it may reverse. Upon petition for mandamus the circuit court must deny a writ if the conclusion of the Commission has "sufficient" support in the record. Upon appeal to this court we can only review the acts of the circuit court. Thus the commission, not the Board, is the final arbiter of the facts, though never seeing nor hearing the witnesses. We know of no other similar method of review of the finding of a trial body in this state. *Page 1136 
If we have correctly stated the holding in Mt. Brook, this court must respectfully disagree with it. Though legally bound to follow it in this and all cases, we feel obligated to point out the clear (we think) inconsistency with the decision inMarshall County. As we interpret Mt. Brook, we believe the action of the trial court in denying mandamus to be correct. Therefore, we will affirm the judgment of the trial court.
Though the Supreme Court in Mt. Brook did, contrary to its rule for reviewing by certiorari the finding of facts of this court, go to the record and determine therefrom that there was "sufficient" evidence to support the finding and conclusion of the Commission, we hereinafter enter a finding of fact from the record of the proceedings before the Board of Education which record was reviewed by the Commission. We make such finding for the aid of the Supreme Court in the event certiorari is requested and granted from the judgment of this court.
Levon Puckett was a teacher with continuing service status (tenure) in Sumter County. Puckett was charged by the Sumter County Board of Education with administering excessive and harsh punishment to students under his supervision. He was warned by administrators of the Board to cease such actions, but did not permanently heed such instructions.
On June 8, 1976, a proper hearing was held by the Board. The evidence tended to show that Mr. Puckett had been employed as a teacher-coach, physical education instructor and school bus driver for nine years in a junior high school. It was without dispute that Mr. Puckett used corporal punishment in the form of paddling with a paddle or belt as a means of punishment for misbehavior or failure to carry out assignments. Mr. Puckett admitted that it had been his practice to use such punishment with reasonable restraint.
The Sumter County Board of Education had a written policy permitting corporal punishment in the schools but directed to be administered only by the principal. This policy had been published in a booklet for several years and distributed to the teachers. Mr. Puckett denied receiving a copy or being aware of it. During the school year of 1975-76 and prior thereto, there had been complaints made to the Board and the administrators by parents of children who claimed to have been paddled by Mr. Puckett. He admitted some of these claims but denied their severity.
In October of 1975, the superintendent of schools discussed with Mr. Puckett complaints against him. He said he discussed the published policy as to corporal punishment with Mr. Puckett and suggested he seek the help and advice of the principal in future disciplinary action. On April 22, 1976, the parents of a student brought the child before the Board and complained that he had been paddled by Mr. Puckett. They exhibited the child's bruised buttocks to the Board. Mr. Puckett was immediately summoned and questioned concerning the child. He admitted that he had given the child nine licks with a paddle because he had failed to turn in a homework assignment. He expressed his belief that such punishment was necessary to maintain discipline. In response to questions of the superintendent he admitted that the act of punishing the child was what he had previously been asked not to do.
The assistant superintendent stated that he discussed with Mr. Puckett rumors of his paddling his students. He informed Mr. Puckett that he was to turn children in his class over to the principal if they were so unruly that he couldn't "handle" them.
The principal testified that he had talked with Mr. Puckett concerning complaints which he received about excessive corporal punishment. He stated that he informed Mr. Puckett that he should not administer such punishment but should refer such matters to him. The principal stated that in 1975 he received 20 to 25 complaints from parents concerning the severity of punishment inflicted by Mr. Puckett on their children. He further stated that it was his announced policy in the school that no teacher inflict corporal punishment but send the students to him. He had directed Mr. Puckett to stop giving such punishment *Page 1137 
permanently and not to just lay off for two weeks. He did not know of any other teacher in his school giving corporal punishment.
Testimony by witnesses called by Mr. Puckett began with fellow teachers who stated they were aware of the policy that students be sent to the principal if corporal punishment was to be given and that they sent pupils to the principal.
A student testified that he had retrieved a paddle from the roof of the school building for Mr. Puckett in the fall of 1975. Another student testified that he was paddled by Mr. Puckett but not severely.
Mr. Puckett admitted that he paddled students and felt it necessary to maintain discipline. He stated that when he stopped paddling for two weeks at the request of the principal, discipline deteriorated badly. He denied that the principal or superintendent had ever told him to permanently stop paddling, but only requested that he lay off for a while, such as two weeks, and not to be so severe. Because of such requests, he locked up his paddle for two weeks and later threw it up on the building for two or three weeks. When he asked the superintendent if he had received a particular parental complaint about his paddling a girl, the superintendent told him he had not and was not against paddling if they needed it.
Mr. Puckett identified his paddle and acknowledged that it was the one he used. It is described as 2 3/4 inches wide, 1/2 inch thick and about 12 inches long.
Succinctly summarized, the undisputed testimony is that Mr. Puckett regularly applied corporal punishment to his students. Many of the parents complained to the principal and the Board of Education. The Board had a policy that corporal punishment be administered only by a principal. Such policy was incorporated in a booklet and given to each teacher. This policy was discussed at regular faculty meetings in the school where Mr. Puckett was employed. His wife was also a teacher in the same system. The principal, assistant superintendent and superintendent had discussed with Mr. Puckett complaints by parents against him.
The only disputed testimony is whether these officials told Mr. Puckett of the policy of the Board and that he was not to paddle anymore. Mr. Puckett said he was not given a copy of the booklet as other teachers were; that he did not attend faculty meetings because he drove a school bus; that he was never told to permanently cease paddling but only to lay off for two or three weeks.
With this statement of the evidence, we affirm the court below.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.