This is an appeal from a judgment by the Circuit Court of Morgan County denying appellant's petition for a writ of mandamus. Appellant's petition for mandamus sought to compel the reversal of an order by the Alabama State Tenure Commission affirming a decision by the Hartselle City Board of Education to cancel appellant's contract *Page 607 
as a principal in the city school system. Appellant has obtained "continuing service status" under the Teachers' Tenure Law, Title 52, Section 351, et seq. of the Code of Alabama 1940 (Recomp. 1958).
On May 11, 1976 the Hartselle City Board of Education notified appellant by letter that the Board proposed to cancel his contract as principal of Burleson Elementary School. The reasons given for the proposed cancellation were: falsehoods, insubordination, neglect of duty, lack of cooperation, and wilfully creating dissension. In its notice to appellant the Board recited twelve specifications as evidence of the reasons for cancellation. On June 5, 1976 the Board held a full hearing at which appellant appeared and evidence was presented on behalf of both parties. On June 9, 1976 appellant was notified by the Board of its unanimous resolution cancelling appellant's contract.[1] Appellant then filed notice of appeal to the Alabama State Tenure Commission. A hearing on the matter was held by the Tenure Commission and it sustained the decision of the Hartselle School Board. Appellant then sought a writ of mandamus in the circuit court. From the circuit court's final judgment denying the writ, this appeal followed.
Appellant urges on appeal that the notice he received from the Board failed to apprise him of the charges against him thus depriving him of his constitutional right to procedural due process. Appellant also contends that his dismissal was based on the exercise of his constitutionally protected right of free speech. Furthermore, appellant insists that the action of the Board of Education was arbitrary and unjust in that it was taken for political or personal reasons, and that the grounds for cancellation were unsupported by the evidence. On the basis of these contentions, appellant asserts that the circuit court improperly denied appellant's petition for mandamus.
The record reveals the following facts. Before the 1975-76 school year a decision was made to create a city school system for Hartselle. Burleson Elementary School, of which appellant was principal, was one of several schools removed from the Morgan County school system and placed in the newly created city system. A large segment of the community, including appellant, opposed this change. Nonetheless, appellant applied for the newly created post of Superintendent of City Schools. Appellant did not receive this position and he acknowledged that he was extremely disappointed at not receiving it. When a superintendent and assistant superintendent were brought in from outside the existing school system, appellant stated to several persons that he would "show that a mistake had been made in not appointing him." These events were the prelude to a series of incidents which lead to the cancellation of appellant's contract.
The first such incident was a dispute between appellant and the new superintendent. This dispute occurred in August of 1975 and involved the superintendent's decision not to replace a teacher who had left her job at appellant's school. Appellant spoke of this decision in a critical manner to third parties despite the fact that the superintendent had asked him not to. When the superintendent confronted appellant about his behavior, the appellant at first denied he had spoken to others about the matter, then later admitted it, stating that it had been his purpose to "do the superintendent in" but now he was going to cooperate.
The next incident occurred on October 9, 1975 when appellant attended a workshop for principals in Muscle Shoals, Alabama without notifying the superintendent. Another principal from Hartselle who attended the workshop did notify the superintendent pursuant to a request made by the latter that principals notify him or the assistant superintendent when they planned *Page 608 
to be absent from their schools. Testimony did reveal that principals were encouraged to attend such workshops and appellant would have received permission to go had he asked for it.
Appellant was again absent from his school on November 24 and December 2, 1975. Neither absence had been reported in advance to the superintendent. The superintendent questioned appellant about these absences but appellant gave no satisfactory explanation for them. Although appellant had not claimed sick leave for these absences on the payroll which immediately followed them, he did, after being questioned by the superintendent, claim sick leave for those two days on a subsequent payroll.
On November 7, 1975 the superintendent and his assistant superintendent met with the appellant to discuss a report that they had received accusing appellant of not cooperating with the administrator in charge of special education. At that meeting appellant did not admit that he had failed to cooperate with the administrator but he did state that his actions in resistance to administration policy were the result of his deep disappointment in not having been selected as superintendent. However, appellant again promised to improve his attitude and behavior.
In December of 1975 it was publicized in Hartselle that the teaching contracts for the following year would be distributed to the teachers on December 19, 1975. Although he had notice of this fact, appellant failed to deliver the contracts to the teachers at Burleson Elementary School on that date. Because other teachers in the school system received their contracts on that date, the superintendent called appellant to express his concern over the latter's failure to deliver the contracts. This concern was premised on the fact that the contracts were to be returned to the school board by January 5, 1976. After the superintendent's call, appellant personally delivered the contracts to the teachers of Burleson School during the Christmas holidays.
Another confrontation between appellant and the superintendent occurred at a meeting between the two on January 16, 1976. At that meeting the assistant superintendent informed appellant that he would have to support the decisions of the superintendent. Appellant informed both the superintendent and the assistant superintendent that he (appellant) did not think he was required to support final decisions made by the superintendent. He also stated that he did not think he could be fired for failing to support such decisions. At that time, appellant also charged that he was being harassed by the assistant superintendent. The assistant superintendent denied this allegation but appellant insisted he could prove it in court. This meeting terminated without any resolution of the problems which existed between appellant and his superiors.
On April 15, 1976 the superintendent's office notified all principals that their school custodians would not work on Good Friday. When appellant's secretary conveyed this information to him, appellant telephoned the business manager of the city school system and told the latter of arrangements which appellant had already made to have the janitor of Burleson School work on that date. The business manager told appellant that the janitor was not to work on that date. Appellant then attempted to contact the superintendent with regard to this matter but could not reach him. Later, appellant sent a payroll to the business manager which demonstrated that the janitor of Burleson School had worked on Good Friday. The superintendent wrote appellant a letter stating that the janitor would not be paid out of payroll funds. Appellant went to see the superintendent and stated that he considered the superintendent's letter "threatening." The superintendent told appellant that appellant's actions in permitting the janitor to work were insubordinate. At this point in the conversation appellant informed the superintendent that if the latter wished to prefer charges against him, the superintendent *Page 609 
could do so, but if he did, appellant would cause the superintendent to be fired.
Although numerous, the aforementioned events do not exhaust the charges and countercharges which were made at the hearing before the Hartselle School Board. There was additional testimony that appellant had frequently arrived late at the school; that he had failed to attend a local teachers' workshop at which his presence was required; that he had made numerous derogatory remarks to third parties about the superintendent and the latter's ability to run the school system; that he had told the mayor of Hartselle that his (appellant's) actions toward the superintendent had been wrong; and that on one occasion in an argument over the superintendent's policy for salary payments, appellant had said to the superintendent, "You are omnipotent you tell me." However, most of this testimony was contradicted by various witnesses or denied outright by appellant. Nonetheless, it further indicates the acrimony and discord which lead to the cancellation of appellant's contract.
Appellant contends that the circuit court improperly denied appellant's petition for mandamus. The circuit court's denial was based on our supreme court's recent decision in AlabamaState Tenure Commission v. Mountain Brook Board of Education, Ala., 343 So.2d 522 (1976). That case stated that a circuit court's review of a petition for mandamus against an order by the Tenure Commission was limited to the following inquiries. First, were the procedural requirements of Title 52, Section 351, et seq. of the Alabama Code complied with. And second, was there sufficient evidence before the Tenure Commission to support its decision to uphold or reverse a board of education's conclusions. In the instant case, the circuit court found that the two pronged inquiry established by MountainBrook Board of Education should be answered in the affirmative and thus denied appellant's petition. The circuit court did not err in this denial.
The first inquiry which must be examined on appeal from decisions by the Tenure Commission involves whether proper procedural requirements were complied with. Although appellant maintains that he was denied procedural due process because the notice he received was defective, an examination of this assertion demonstrates that it is unfounded.
Briefly, appellant claims that he was not informed by the Board's letter on May 11, 1976 that he would be required to defend his removal on the grounds of "other good and just cause" and that it was on such grounds that his contract was cancelled.
At the outset, the record demonstrates that "other good and just cause" was not the sole basis for appellant's removal. Additional evidence was such that the Board might well have found he was guilty of the other acts with which he was charged — specifically, acts of insubordination [2] and neglect of duty.[3] Moreover, "other good and just cause" would encompass the additional grounds which the Board set out in its letter to appellant as reasons for his removal. Those grounds were falsehoods, lack of cooperation, and wilfully creating dissension.
Although no Alabama court has provided a detailed definition of "other good and just cause," 68 Am.Jur.2d Schools § 183 states:
 ". . . Indeed, it has been said . . . `good cause' in a statute of this kind [Tenure Act] is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. Limited only by the statutory provision that they must be good *Page 610 
and just causes, the jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities."
In Cooper v. Perry County Board of Education, 264 Ala. 251,86 So.2d 832 (1955) our supreme court stated:
 ". . . The Supreme Court of Indiana in Stiver v. State ex rel. Kent [211 Ind. 380, 1 N.E.2d 1006], . . . interpreted the term `other good and just cause' as used in the Teachers' Tenure Law, to include any cause which bears a reasonable relation to the teacher's fitness or capacity to discharge the duties of his position. That Court held that `lack of cooperation' is legal cause within the provision `other good and just cause.'"
And in State Tenure Commission v. Madison County Board ofEducation, 282 Ala. 658, 213 So.2d 823 (1968), "lack of cooperation" was held to be legal cause within the provision "other good and just cause."
Other reasonable grounds for dismissal such as "falsehoods" and "wilfully creating dissension" are not arbitrary, irrational, or irrelevant to the task of maintaining an efficient school system. Provided such charges are made in good faith by the school board, they may be properly considered within the scope of "other good and just cause."
Furthermore, it should be noted that the letter notifying appellant of the proposed cancellation of his contract specified in a detailed manner the events (and dates thereof) upon which the cancellation was based; it informed him of the right to counsel and the right to confront witnesses at the hearing; and finally, it stated the time and place at which the hearing would be held. Nor were any new charges made at the hearing. Appellant was represented by counsel at that hearing; his attorney was allowed to cross examine opposing witnesses; and appellant presented nine witnesses in his own behalf. Thus, in view of existing principles of law and the facts involved in the present case, it cannot be said that appellant was denied the right to procedural due process. The circuit court did not err in holding that the procedural requirements of Title 52, Section 351 et seq. were complied with.
Once it is determined that the procedural requirements of the Teachers' Tenure Act have been complied with, a second inquiry is necessary in order to decide whether there was sufficient evidence before the Tenure Commission to support its affirmation (or reversal) of the Board's original action in terminating a tenured teacher's contract. With regard to this second inquiry, appellant urges that his dismissal was based on the exercise of his constitutionally protected right of freedom of speech and, therefore, was arbitrarily unjust.
Teachers have the right to criticize their employers. Perryv. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570
(1972). However this right is not absolute. Pred v. Board ofPublic Instruction of Dade County, 415 F.2d 851 (5th Cir. 1969). Indeed, the constitutionally protected right of a public school teacher to criticize the school administration and to comment on matters of public concern is a limited right which must be balanced against the need for an orderly administration of the school system. Pickering v. Board of Education,391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Moore v. WinfieldCity Board of Education, 452 F.2d 726 (5th Cir. 1971). Moreover, the right of a teacher to criticize the ideas or actions of his superiors is subject to the requirement that it be done in good faith and not with the intent to bring such superiors into disrepute. Moore v. Winfield City Board ofEducation, supra; Lusk v. Estes, 361 F. Supp. 653 (N.D.Tex. 1973).
In the instant case testimony taken at the hearing before the Hartselle School Board would authorize the conclusion that the appellant's statements criticizing the superintendent and the assistant superintendent were not made in good faith, but rather, were made because of appellant's disappointment at not being selected superintendent. In addition, many of appellant's statements could reasonably be interpreted as having been made to bring his superiors into disrepute. *Page 611 
Furthermore, there is substantial evidence to support the conclusion that appellant's termination was not motivated by his exercise of the right of freedom of expression. Evidence was presented that appellant had engaged in acts of insubordination and neglect of duty and that on several occasions he had failed to cooperate with those who administered the school system. Proof of such acts might very well be deemed disruptive to the orderly and efficient administration of the school system thus warranting the cancellation of appellant's contract on grounds other than the exercise of his right of free speech.
An additional basis for appellant's claim that the circuit court erred in finding that there was sufficient evidence before the Tenure Commission to justify its order upholding the Hartselle School Board's action is that the court and the Tenure Commission failed to recognize that the Board's action was taken for political or personal reasons.
Title 52, Section 358 provides in part that "cancellation [of a tenured individual's contract] may not be made for political or personal reasons." However, our supreme court in MarshallCounty Board of Education v. State Tenure Commission, 291 Ala. 281, 280 So.2d 130 (1973), construed this language to mean that no teacher should be transferred or have his contract cancelled if this action was grounded exclusively or primarily on political or personal reasons. Further, the court stated that such reasons would require personal bias, prejudice, or antipathy on the part of one or more Board members toward the teacher which influenced that member's decision in exercising the quasi-judicial function of voting on a transfer or cancellation.
In this case there is no evidence that appellant's contract was cancelled exclusively or primarily for "political or personal" reasons. Nor is there evidence of bias, prejudice, or antipathy on the part of any Board members. In fact, during the year prior to the creation of the Hartselle city school system, a school advisory board (all of whom, with one exception, became members of the Hartselle City Board of Education) voted to have their chairman write a letter in praise of the appellant.
The circuit court did not err in finding that there was sufficient evidence before the Tenure Commission to permit the Commission to make a determination that appellant's discharge was not for "political or personal" reasons.
Finally, appellant contends that the circuit court was in error in that the existence of one or more of the statutory grounds for cancellation was unsupported by the evidence before the Tenure Commission.
As stated earlier, the circuit court's review in matters involving the cancellation of a tenured individual's contract is limited to an examination of whether there was sufficient evidence before the Tenure Commission to support its conclusion that the decision of a board of education should be upheld. Although much of the evidence in this case was in conflict, the record before this court indicates that the grounds for cancellation were sufficiently supported by the evidence within the aforementioned rule of review to require an affirmance of the judgment of the circuit court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] Title 52, Section 358 of the Alabama Code provides:
 "Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause. . . ."
[2] "Insubordination imports wilfull disregard of express or implied directions or such a defiant attitude as to be the equivalent thereto." 21A Words and Phrases, Insubordination
554.
[3] Black's Law Dictionary (4th ed. 1968), defines "neglect" as a "refusal or unwillingness to perform one's duty."