HOLMES, Judge.
This is a teacher tenure ease.
The teacher-principal, Thomas Pinion, had been employed by the Jefferson County school system for eighteen years and had attained continuing service status (tenure). The county board of education terminated the teacher, and he appealed to the Alabama State Tenure Commission. The tenure commission affirmed the decision of the board of education. The teacher petitioned the circuit court for a writ of mandamus. *1093 The circuit court, in denying the teacher’s petition, found that the action of the tenure commission was in compliance with the applicable provisions of the Teacher Tenure Act and that the action was not arbitrarily unjust.
The teacher, through able counsel, appeals to this court and we affirm.
The teacher’s contentions on appeal are: 1) the action taken by the board of education was arbitrarily unjust; 2) the board of education violated the Teacher Tenure Act when it failed to make specific findings of fact and submit them as part of the record; and 3) certain other acts of the board of education resulted in a denial of the teacher’s right to due process.
We find it neither necessary nor prudent to set forth all the facts which resulted in the teacher’s termination. Suffice it to say that the record before us contains evidence which indicates the teacher failed to properly carry out his duties as principal.
We note “that the State Tenure Commission’s conclusions and judgment will not be reversed on appellate review as being unjust unless it is against the preponderance of the evidence and the overwhelming weight of the evidence.” Sumter County Board of Education v. Alabama State Tenure Comm’n, 352 So.2d 1137, 1139 (Ala.1977).
I
Section 16-24-8, Code of Alabama 1975, provides in pertinent part:
Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, ... or other good and just cause, but cancellation may not be made for political or personal reasons.
Viewing the record with the attendant presumptions, the following is pertinently revealed:
In September, 1979 the board of education notified the teacher that his contract had been suspended and that a hearing had been set to consider terminating the teacher. The board of education stated as grounds for the proposed termination incompetency, insubordination, neglect of duty, and other good and just cause. In support of these statutory grounds for termination, the board of education cited the failure of the teacher to maintain discipline, to properly assess and evaluate the faculty, and to actively participate in the school’s accreditation process. The board of education further alleged that the teacher had failed to report sick days, and that the teacher’s health problems undermined his support from the faculty and the community.
Incompetency can mean disqualification, inability, or incapacity. County Board of Education v. Oliver, 270 Ala. 107, 116 So.2d 556 (1959). The evidence in the record before us supports the conclusion that the teacher was incompetent.
The demerit system employed by the teacher was not an effective means of ensuring discipline. Students were left unsupervised in the “sick” room. The evidence indicates the teacher failed to communicate coherently with students and faculty. His morning intercom announcements were sometimes incomprehensible. The teacher was often sluggish and was seen sleeping at his desk for as much as three hours a day. Once, when sitting in at a conference between a faculty member and a parent, the teacher read a newspaper instead of participating in the discussion between the parent and the other teacher.
Insubordination on the part of the teacher is evidenced here specifically by his failure to comply with the rules of the board of education regarding assessments and evaluations. The teacher allowed his secretary to complete parts of the assessment and evaluation forms. The teacher evaluated some faculty members without properly observing them in a classroom setting.
In alleging that the teacher neglected his duty, the board of education specifically noted that the teacher did not take an active part in the school’s accreditation process. During the fall of 1978, when the *1094 school was being reviewed for accreditation, the teacher was often absent due to illness. A school counselor testified that she had to take primary responsibility for overseeing and completing the entire accreditation process. The teacher failed to participate in or review the school counselor’s plans in this regard.
The board of education also alleged in its notice of proposed termination that the teacher’s health problems constituted good and just cause for termination because “[t]here [would] be extreme troubles with the community and faculty.... ” It is undisputed that the teacher was addicted to alcohol and certain medications. The teacher informed his superiors during the summer of 1979 that he was seeking treatment for his alcohol and drug abuse problem. There is evidence that the teacher successfully completed a rehabilitation program, and his physicians informed the teacher’s superiors of his progress.[1]
The circuit court ruled that if the teacher was indeed on sick leave during the summer of 1979 with the consent of his superiors, then the board of education could not charge the teacher with failing to carry out his responsibilities during that time period. The learned trial court, though, further stated in its order:
However, the charges against [the teacher] do not actually seem to relate to that period of time, and even disregarding that period of time the Court finds there is sufficient evidence to support the Board’s finding.
In view of the above, the findings and conclusions by the board of education and the tenure commission of incompetency, insubordination, and neglect of duty on the part of the teacher are not against the preponderance of the evidence and the overwhelming weight of the evidence. Therefore, this court has no alternative but to affirm.
II
The teacher next contends that the board of education’s failure to make specific findings was a violation of the Teacher Tenure Act.
We find our recent decision in Pratt v. Alabama State Tenure Comm’n, 394 So.2d 18, 21 (Ala.Civ.App.1980), cert. denied, 394 So.2d 22 (Ala.1981), to be dispositive of this point:
At the outset, we note § 16-24-9, Code of Ala. 1975, outlines the procedure the board of education must follow in terminating teacher contracts. Neither this code section nor any other in the Teacher Tenure Act requires the board to make specific findings of fact.
This court is cognizant of § 16-24-10(b), Code of Ala. 1975, which requires the board of education to assemble, for the purposes of the teacher’s appeal to the State Tenure Commission, the record of its proceedings including the board’s finding and decision.
In the instant action, the teacher was notified by letter that the board of education was considering terminating his contract. This letter, which is contained in the record, listed the statutory grounds and specified the reasons for the proposed termination. The hearing in this action lasted five days and resulted in a 1246 page transcript. The teacher was represented by an attorney throughout the proceeding. Thereafter, the teacher was notified in writing that the board of education had considered all the evidence and exhibits presented at the hearing and had voted in favor of termination. The evidence, as indicated above, supports this finding.
Therefore, we cannot hold that the board of education’s failure to make specific findings violated the Teacher Tenure Act. We note, however, that it would be better practice for the board of education to make specific findings setting forth the grounds upon which it relied in terminating the teacher’s contract. Pratt v. Alabama State Tenure Comm’n, supra.
Ill
The teacher’s final contention is that he was deprived of due process of law. The *1095 essential pertinent elements of due process under the Teacher Tenure Act which relate to the teacher’s final contention are that the teacher or his counsel appear and be allowed to examine and cross-examine witnesses. Alabama State Tenure Comm’n v. Board of School Commissioners, 332 So.2d 724 (Ala.Civ.App.), cert. denied, 332 So.2d 732 (Ala.1976).
The teacher alleges that the board of education intimidated one of the teacher’s witnesses, William Pugh, who served as director of employee relations and as in-house counsel to the board. Mr. Pugh was questioned about an alleged statement made by a member of the board of education which might have indicated personal or political bias on the part of the board of education in violation of section 16-24-8. See Marshall County Board of Education v. Alabama State Tenure Comm’n, 291 Ala. 281, 280 So.2d 130 (1973).
We have reviewed the record and can find no evidence that Mr. Pugh was intimidated or otherwise prohibited from responding to questions put to him by the teacher’s attorney. Indeed, members of the board of education themselves questioned Mr. Pugh about this alleged statement. Mr. Pugh’s testimony on this point fills several pages of the record on appeal. Because Mr. Pugh was allowed to testify at length about the alleged statement, and because there is no evidence that he was prevented from so testifying, the teacher’s due process right to examine and cross-examine witnesses was satisfied.
The teacher also contends his right to due process was violated because this same witness, Mr. Pugh, was present during the executive session of the board of education when the vote was taken to terminate the teacher.
We initially point out that the minutes of the board of education’s meeting are not part of the record on appeal, and thus this court cannot look to evidence dehors the record to determine who was present at the meeting. Southern Haulers, Inc. v. Martin, 382 So.2d 491 (Ala.1980).
The record does reflect, as indicated, that Mr. Pugh served in some instances as in-house counsel and as the director of employee relations (personnel director) for the board of education. It is also apparent that the teacher was aware of Mr. Pugh’s connection with the board of education when the teacher called Mr. Pugh as a witness. The teacher made no objection to Mr. Pugh’s presence at the hearing nor did the teacher raise questions about the capacity in which Mr. Pugh served.
Assuming, then, that Mr. Pugh actually attended the board of education’s executive session, we can find no denial of due process on these facts, especially in light of the fact that the teacher himself chose to call as a witness the person who served as in-house counsel for the board of education and the director of employee relations.
In view of all the above, we find this cause is due to be affirmed.
AFFIRMED.
WRIGHT, P. J., and BRADLEY, J., concur.

. The teacher is to be commended for this action.