PITTMAN, Judge,
dissenting.
By statute, the action of the State Tenure Commission in upholding Jamie Jones’s transfer by the Mobile County Board of School Commissioners is “final and conclusive” unless it is “unjust.” Ala. Code 1975, § 16-24-38. Although Jones was authorized to seek mandamus review in the circuit court of the decision of the State Tenure Commission, that review was “ ‘limited to two determinations, first, whether the Tenure Commission’s action was made in compliance with the provisions of the chapter, and second, whether th[at] action was unjust.’ ” Ex parte Alabama State Tenure Comm’n, 555 So.2d 1071, 1072 (Ala.1989) (quoting Sumter County Bd. of Educ. v. Alabama State Tenure Comm’n, 352 So.2d 1137, 1138 (Ala.1977)). As our Supreme Court has stated, “the decision of the Commission should not be reversed unless the overwhelming weight of the evidence dictates otherwise.” Ex parte Alabama State Tenure Comm’n, 555 So.2d at 1073 (emphasis added). That standard of review applies not only in the circuit court, but also in this court. See Alabama State Tenure Comm’n v. Singleton, 475 So.2d 185, 186 (Ala.Civ.App.1984).
As this court aptly noted in State Tenure Commission v. Pike County Board of Education, 349 So.2d 1173 (Ala.Civ.App. 1977), “[t]he statutory duty to administer and supervise the public schools in a county is charged to the county board of education,” and “[t]he setting of educational policy and the conduct and management of the schools is the responsibility of the county board of education.” 349 So.2d at 1175. Those responsibilities necessarily include personnel decisions, such as whether to retain a tenured teacher at a particular school or to transfer the teacher to another school where his or her employment would be more suitable. To that end, § 16-24-5, Ala.Code 1975, provides, in pertinent part, that any continuing-service teacher, “upon the recommendation of the superintendent and the approval of the employing board of education, may be transferred for any succeeding year from *67 one ... school ... to another” by written notice.
There are but two statutory limitations upon a school board’s transfer authority set forth in § 16-24-5: (1) a transfer “shall be without loss of status or violation of contract,” and (2) a transfer “may not be for political or personal reasons ” (emphasis added). We note that the bar against transfers based upon personal or political reasons parallels that in § 16-24-8 pertaining to cancellation of employment contracts of tenured teachers. In 1973, our Supreme Court, in construing the statutory predecessors of § 16-24-5 and § 16-24-8 on certiorari review of a judgment of this court reviewing the cancellation of a tenured teacher’s contract, spoke at length to the meaning of “political” and “personal” reasons:
“We think the political reasons the Legislature had in mind ... were that no tenured teacher could be transferred or discharged on the ground that the teacher did not belong to the same political party that a majority of the board members belonged, or that the teacher had voted for a political opponent of the board, or that the teacher had or had not professed a political preference in any political race, or that the teacher had become a candidate for public office, or for any similar political activity we have not specifically mentioned. In short, the Board cannot indirectly punish a teacher for that teacher’s political activity or that teacher’s refraining from political activity.
“It is common knowledge that whenever anyone on the public payroll is involuntarily transferred to another job or discharged, or even when charges are preferred, the inevitable response is that the reason is ‘politics.’ And the claim of politics becomes more shrill when the hirer and firer is a body of elected officials and that body has to take its action by a majority vote.
“Under our statutes, no tenured teacher can be transferred or discharged without a majority vote of the Board of Education, and that holding cannot be affirmed or rejected by the Tenure Commission except by majority vote. But those mere facts do not make either body’s action political in the sense it is used in the statute.
“We think the word ‘personal’ as used in the tenure statute denotes a personal bias, prejudice, or antipathy on the part of one or more of the Board members toward the teacher; and when it influences a Board member’s vote when that member is exercising a quasi-judicial function in voting on a transfer or cancellation. Personal is in contrast with judicial; it characterizes an attitude of extrajudicial origin.
“The Court of Civil Appeals quoted at length from State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 [ (1949) ], to support its holding that a tenured teacher cannot have his contract cancelled by the Board if the Superintendent of Education has political or personal reasons for wanting the teacher’s contract cancelled, but no evidence is listed that the Board acted for those reasons. We do not think the Fairfield case so holds. In that case, the teacher sought to show that the Superintendent had a personal dislike for her and refused to let her take a test when he had permitted other teachers to take it at a subsequent date from the date originally set. The Superintendent also refused to answer questions which could have shown bias or prejudice against the teacher. This court held that the hearing ‘served the purpose of enabling the board of education to hear both sides of the case’ and that the teacher was enti- *68 tied to have the Superintendent answer these questions. ‘His answers thereto could have materially affected the final decision of the board of education.’ (Emphasis supplied [in Marshall County Bd. of Educ.]) But the teacher was prevented from presenting evidence tending to show that the proceedings to cancel her contract, which was cancelled because of insubordination, were motivated by personal reasons. Certainly, she should have been permitted to show, if she could, the personal feeling of the Superintendent toward her. But unless she could show a carry-over of that dislike to the members of the board, she would not be able to attribute political or personal reasons to the board, the only people who could cancel her contract for insubordination.
“We cannot agree with petitioner that the words in the last clause of [what is now § 16-24-8], ‘but cancellation may not be made for political or personal reasons[,]’ are meaningless surplusage. We have tried to show that the Legislature put them there for a purpose, and they should be considered and applied, but ... they are not so dominantly important as to nullify all Board actions.
“We think the Legislature intended that no teacher should be transferred or have his contract cancelled if his transfer either was grounded exclusively or primarily on political or personal reasons.”
Marshall County Bd. of Educ. v. State Tenure Comm’n, 291 Ala. 281, 286-87, 280 So.2d 130, 133-35 (1973) (second emphasis added).
Although a school board’s discretion to transfer a continuing-service teacher or to cancel his or her contract is limited in both cases by the bar against “political or personal reasons,” it must be remembered that a transfer is not a permanent severance of employment. Unlike cancellation, which “is permissible only for specific offenses,” a transfer does not require a statutory cause; the Legislature, in enacting § 16-24-5, “intended to prohibit transfer of teachers for personal or political reasons of the transferring authority or arbitrarily without basis for exercise of administrative discretion.” DeCarlo v. Tarrant City Bd. of Educ., 52 Ala.App. 220, 223, 291 So.2d 155, 158 (Civ.App.1974).
The Board’s stated rationale for transferring Jones from Theodore High School was that she was disruptive among faculty members, she did not get along with her co-workers, and she left the school during school hours to purchase beer at a nearby drugstore. The evidentiary record made before the school board and transmitted to the Tenure Commission indicates that a Theodore High School faculty member, Jeanie Curtis, witnessed Jones as she made a purchase of two or three “packages” of beer at a drugstore eight blocks from Theodore High School, but then left the beer at the drugstore sales counter. According to Curtis’s written statement, when Jones became aware that Curtis had informed school administrators of the unusual circumstances of Jones’s beer purchase, Jones angrily confronted Curtis in Curtis’s office, saying “[y]ou need to understand that what I do during school time and afterwards is none of your business and you better stay out of mine! Don’t you ever include my name as part of your vocabulary again.” Jones also told Curtis “you can be assured I’ll get you long before you get me,” and repeatedly said “[i]f you’ve got a problem with what I do, I’ll meet you somewhere after school off campus!” After an investigation of the incident, the principal of Theodore High School recommended Jones’s transfer, stating that “[w]hile it is a practice to occasionally allow teachers to leave campus during their planning time,” he felt *69 that Jones had abused the privilege by buying beer in the vicinity of the school during school hours.
Although the record reveals that Curtis no longer works at Theodore High School, Jones’s behavior toward Curtis evidenced by the documentary evidence[4] before the school board and the State Tenure Commission could reasonably be said to be hostile and confrontational. The school board could properly have inferred that if Jones had threatened Curtis, she might do the same to another teacher in the future; the school board also could reasonably have concluded that Jones’s continued service at Theodore High School could ultimately damage relationships among members of its faculty. The school board’s decision to transfer Jones is not “subject to review as to its wisdom or necessity, but only as to whether it was made for personal or political reasons, or whether it was so unsupported in fact or reason as to be arbitrary and capricious.” Pike County Bd. of Educ., 349 So.2d at 1175.
The central question is this: bearing in mind the applicable standard of review, did the State Tenure Commission err in determining that the school board did not transfer Jones to another school based upon political, personal, or arbitrary and capricious reasons instead of the reasons given by the school board? Based upon the evidence I have set forth above, I cannot agree with the main opinion that the State Tenure Commission erred. I therefore respectfully dissent from the reversal of the trial court’s judgment upholding the decision of the State Tenure Commission.

. Administrative boards such as the school board and the State Tenure Commission "are not restricted to a consideration of evidence which would be legal in a court of law and may consider evidence of probative force even though it may be hearsay or otherwise illegal." Estes v. Board of Funeral Serv., 409 So.2d 803, 804 (Ala.1982).