The appellants, Christopher Gibbs and Timothy Woods, were convicted of first degree assault, a violation of § 13A-6-20, Ala. Code 1975, and were sentenced to 20 years' imprisonment. The main issue raised in this appeal is whether the prosecution presented sufficient evidence to support these convictions.
The facts show that on July 23, 1995, Gibbs drove to Union Springs from Millbrook. Along the way he picked up Woods and a third party, known only as "Pooh." Apparently, Gibbs was driving to Union Springs to see his children and his girlfriend, Sharon Jones, who is the mother of his children. When the three men arrived in Union Springs, they initially went to a nightclub called the Ponderosa Club. Kimberly Jones, Sharon's sister, was at this nightclub and began talking to Gibbs. According to Kimberly, Gibbs was looking for a particular man, whom she pointed out. Gibbs and this man walked outside and started fighting. Kimberly testified that Gibbs had a handgun and that Pooh was aiding Gibbs in the fight; she also noticed that Woods was holding a shotgun, but was not participating in the altercation. After the fight broke up, Gibbs told Kimberly that he was going to see Sharon. Kimberly lived in the same mobile home park as her sister Sharon, so she rode with these three men back to the mobile home park. Kimberly testified that on the drive over to the mobile home park, Woods handed the shotgun to Pooh after Gibbs told him to do so; she stated that there were three guns in the car, two pistols and a shotgun.
When they arrived at the mobile home park, Gibbs got out of the car and headed for Sharon Jones's trailer. Kimberly, fearing that Gibbs was angry, ran to her mobile home, which was located two homes from Sharon's, so that she could call her sister and warn her. Kimberly stated that she was scared for her sister, because Gibbs had fought with her in the past and had said on the drive over that he "was going to kick [her] sister's ass."
Gibbs began banging on Sharon's front door, yelling for her to let him in. Sharon had a guest that night, Kendall Rodgers, who went to answer the front door. While Rodgers was at the door, Sharon looked out a window and then told him to get his gun. Rodgers got his pistol from the bedside table, cocked it, and went to the front door. In the meantime, Gibbs had kicked in the front door and entered the mobile home brandishing a pistol. After he entered, Gibbs approached Sharon and put the pistol to her head; at that point, Rodgers told Gibbs that there were children in the trailer and to put his gun down. Gibbs then pointed the pistol at Rodgers's head, asking Sharon who the man was. While he was pointing the gun in Rodgers's face, Gibbs yelled out the window for someone to bring him his "glock 'cause [he was] going to kill" Rodgers. At this point, Sharon walked down the hall toward the room where her children were sleeping. Gibbs followed her down the hall and confronted her while she was holding one of their children; Gibbs was pointing the gun at Sharon's head, threatening to kill her. Rodgers testified that he was scared that Gibbs was going to shoot Sharon so he fired his gun at Gibbs; this shot struck Gibbs in the back. After Gibbs was shot, he fell down and began shooting at Rodgers. Rodgers was able to dodge the bullets and he began to run out of the mobile home. At some point after the initial shots were fired and while he was running out of the house, Rodgers was shot in the right thigh. Further examination of this wound revealed that it was inflicted by a shotgun. Rodgers testified that as he was running out of the mobile home he saw two men leaning against a car and that they started to run when he saw them. Rodgers did not see the person that shot him.
In the meantime, Kimberly was walking from her mobile home, toward Sharon's trailer, when she heard the gunshots. When she got to Sharon's mobile home, she saw Pooh running behind the home with a gun, but she did not see Woods. She also saw Rodgers, who was running toward her screaming that he had been shot. Kimberly accompanied Rodgers back to her mobile home; a few minutes later Sharon, who had been shot in the arm, ran to Kimberly's mobile home. Kimberly set out to take both Rodgers and *Page 652 
Sharon to the hospital; on the way to the hospital, they encountered an ambulance, which took the injured persons to the hospital.
Sharon Jones testified as to the events that took place that night. Although she had initially told the police that Gibbs had pointed a gun in her face, she testified at trial that she did not remember Gibbs's having a gun that night. She also testified that she saw a shotgun blast, but she did not know who fired the weapon. When asked whether she could identify the person who fired the shotgun, Sharon testified, "I could picture his face, but the only person I seen that night was [Woods]." She stated that she knew Woods because he and Gibbs were friends and "hung out" together, that she had seen Woods that night, that she did not see a third person, and that she did not know who fired the shotgun.
The prosecution presented evidence that at least three shots had been fired in the mobile home, relying on the number of bullet holes found in the walls of the dwelling. The evidence showed that one bullet hit the wall in the area where Gibbs had been shot and that there were two bullet holes found on the other side of the mobile home from where Gibbs had been shot, i.e., in the area where Rodgers was standing when he shot Gibbs. The prosecution also introduced testimony from a physician who had treated Rodgers that Rodgers had been injured by a gunshot from a shotgun.
Gibbs and Woods were tried jointly and the jury returned guilty verdicts against both of them for first degree assault. On appeal Gibbs raises three issues: 1) whether the trial court's decision to try both men jointly was prejudicial; 2) whether the trial court erred in excluding certain testimony, based on its ruling that the testimony constituted inadmissible hearsay; and 3) whether the prosecution presented sufficient evidence to sustain a conviction for first degree assault. Woods raises only one issue on appeal: whether the prosecution presented sufficient evidence to sustain a conviction against him for first degree assault. Both Gibbs's and Woods's motions for judgment of acquittal were raised after the conclusion of the prosecution's case and after the conclusion of the appellants' cases. We will address each of the appellants' arguments separately.
 I.
Gibbs first argues that the trial court erred in granting the prosecution's motion to consolidate his case and Woods's case for trial. Specifically, Gibbs contends that the joint trial prejudiced to him and that, therefore, his conviction should be reversed. The joinder and consolidation of trials for criminal offenses is addressed by Rule 13.3, Ala.R.Crim.P. Rule 13.3(c) states:
 "Consolidation. If offenses or defendants are charged in separate indictments, information, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint. Proceedings thereafter shall be the same as if the prosecution initially were under a single indictment, information, or complaint. However, the court shall not order that the offenses or the defendants, as the case may be, be tried together without first providing the defendant or defendants and the prosecutor an opportunity to be heard."
A trial court's decision to consolidate is entitled to deference on appeal and will not be overturned absent a showing of abuse of discretion. Curry v. State, 601 So.2d 157, 160
(Ala.Cr.App. 1992); Gladden v. State, 551 So.2d 1141
(Ala.Cr.App. 1989). In order to show that the trial court abused its discretion in consolidating the cases for trial, the appellant must show that consolidation resulted in an unfair trial and that the appellant " 'suffered compelling prejudice against which the trial court was unable to afford protection.' " Curry, 601 So.2d at 160 (quoting United States v. Webster,734 F.2d 1048, 1052 (5th Cir.) cert. denied sub nom., Hoskinsv. United States, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506
(1984)). The test for determining whether a trial court erred in consolidating two or more criminal cases is whether the defenses presented by one defendant were so "antagonistic that [the defenses] are *Page 653 
'irreconcilable and mutually exclusive' and 'the jury, in order to believe one defendant, must necessarily disbelieve the other defendant's defenses." Hill v. State, 481 So.2d 419, 424
(Ala.Cr.App. 1985).
We cannot say that the trial judge erred in consolidating these two cases. The basis of these criminal actions was the shooting of Rodgers. Viewing the evidence presented by the prosecution, we do not believe the defenses of Gibbs and Woods were "irreconcilable and mutually exclusive," so as to preclude a joint trial. Further, Gibbs has raised no argument in this appeal as how the joinder of his trial with that of Appellant Woods was prejudiced him. Therefore, we cannot say that the trial court abused its discretion in granting the prosecution's motion to consolidate these trials under the provisions of Rule 13.3(c), Ala.R.Crim.App.
Gibbs next argues that the trial court erred in ruling that certain testimony was inadmissible hearsay. Gibbs attempted to elicit testimony from his mother concerning certain statements made to her by Sharon Jones immediately after the shooting. The prosecution objected to the introduction of this evidence, claiming that it was hearsay. Rule 801(c), Ala.R.Evid., defines hearsay as a "statement, other than one made by the declarantat trial or hearing, offered in evidence to prove the truth of the matter asserted." (Emphasis added.) Gibbs argues that the trial court erred in ruling that the statements made by Sharon Jones were hearsay, because, he says, she was present in court to testify to these statements. We disagree. The rule specifically defines hearsay as a "statement, other than one made by the declarant at trial or hearing." The relevant inquiry is not whether the declarant is in court to testify or will testify but whether the statement made by the declarant was uttered under oath. Therefore, because the challenged statement was not made at trial or at hearing, the trial court was correct in ruling that this statement constituted inadmissible hearsay.
Gibbs next argues that the prosecution offered insufficient evidence to sustain his conviction for first degree assault. Gibbs contends that he was the victim in this case and that he could not have fired the shot that injured Rodgers, because he did not have a shotgun that night. We agree that the State did not present any evidence tending to show that Gibbs actually fired the shotgun that injured Rodgers. However, proving that Gibbs fired the shotgun is not necessary to sustain a conviction against him for first degree assault. § 13A-2-23, Ala. Code 1975, states:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 "(1) He procures, induces or causes such other person to commit the offense; or
 "(2) He aids or abets such other person in committing the offense; . . . ."
We believe that there was sufficient evidence presented from which a jury could find that Gibbs either procured, induced, or caused another person to commit the offense or that he aided and abetted in the shooting of Rodgers. Viewing the evidence in the light most favorable to the prosecution, we could find that Gibbs entered the mobile home carrying a weapon and threatening the occupants. He called out to his friends outside, asking for a weapon because, as he said, he was going to kill Rodgers. We believe that the jury could reasonably have found that Gibbs asked for help "with the intent to promote or assist the commission of the offense." Section 13A-6-20, Ala. Code 1975, defines first degree assault as the intentional infliction of "serious physical injury by the means of a deadly weapon." There is no question that Rodgers suffered serious physical injury as a result of the gunshot wound and, considering the circumstances surrounding the shooting, the jury could reasonably have inferred that Gibbs had the present intent to inflict injury on the occupants of the mobile home when he entered. Further, there was adequate evidence from which a jury could have found that Gibbs procured, induced, or caused another person to commit the assault. Gibbs called out for a weapon and expressed his intention to use such weapon on an occupant of the mobile home. The Alabama Supreme Court has held that in order to hold an accomplice liable for the acts *Page 654 
of the principal, the prosecution need show only that the actions of the accomplice proximately caused the commission of the offense.
 "[T]his criminal accountability extends, not alone to the enterprise, adventure, or encounter in which the conspirators are engaged, but it takes in the proximate, natural, and logical consequences of such adventure. This, because all men are presumed to intend the proximate, natural, and logical consequences of acts intentionally done; and one who is present, encouraging or ready to aid another in such conditions, must be presumed to be cognizant of that other's intention, to the extent above expressed. If such conspiracy, or community of purpose, embrace the contingency that a deadly encounter may ensue, with common intention, express or implied, to encourage, aid, or assist, even to the taking of life, should the exigencies of the encounter lead up to that result; then, as a general rule, the act of one becomes the act of all, and the one who encourages, or stands ready to assist, is alike guilty with the one who perpetrates the violence. And such community of purpose, or conspiracy, need not be proved by positive testimony. It rarely is proved. The jury are to determine whether it exists, and the extent of it, from the conduct of the parties, and all the testimony in the cause."
Tanner v. State, 92 Ala. 1, 6, 9 So. 613, 615 (1890). See,Jacks v. State, 364 So.2d 397, 402 (Ala.Cr.App.), cert. denied,364 So.2d 406 (Ala. 1984). The jury could have reasonably inferred from the evidence that Gibbs's call for help and a weapon proximately caused the assault on Rodgers. Accordingly, we believe that this evidence was sufficient to sustain a conviction under § 13A-6-20, Ala. Code 1975.
Therefore, Gibbs's conviction for first degree assault is due to be affirmed.
 II.
However, we do believe that there was insufficient evidence presented by the prosecution to sustain a conviction against Woods for first degree assault. In reviewing a claim based on the sufficiency of the evidence, this Court must view all evidence in the light most favorable to the State. Hawkins v.State, 615 So.2d 651 (Ala.Cr.App. 1992). Woods contends, and we agree, that his conviction was necessarily based on circumstantial evidence. "A conviction based solely on circumstantial evidence can be sustained only if the jury could have reasonably found that the State's evidence excluded every reasonable hypothesis except that of the defendant's guilt." Exparte Clark, 591 So.2d 23, 25 (Ala. 1991). See, Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979). If the circumstantial evidence presented by the State can be reconciled with a theory that someone other than the defendant committed the crime, then the conviction is due to be reversed. Ex parte Brown, 499 So.2d 787 (Ala. 1986).
Although there was testimony presented that Woods had in his possession a shotgun at the Ponderosa Club, the prosecution elicited no evidence that Woods fired the shot that injured Rodgers. In fact, testimony proffered by the prosecution showed that Pooh was the last person seen in possession of the shotgun. Further, no witness saw Woods fire the shotgun and no witness placed Woods in possession of the shotgun at the mobile home park. Although the prosecution showed that Woods was near the scene of the crime, they also presented evidence that Pooh was near the scene of the crime. In addition, the prosecution presented evidence that Pooh was seen running behind the mobile home carrying a gun immediately after the shots had been fired.
In its closing arguments, the prosecutor told the jury:
 "The evidence as to exactly what happened in the trailer is fairly clear except what person shot the shotgun. And I stand before you today and say that we cannot say for absolutely [sic] certainty which one of them fired the shotgun.
 "Mr. Gibbs was in the trailer and he was armed with a pistol. We don't have any [evidence] that he was the one that fired the shotgun. *Page 655 
 "The evidence does show that it very well could have been Tim Woods that fired that shotgun.
 "There is also some evidence that some other character was there, too. We don't dispute that some other character could have been there and the other character could have also been the one who shot the shotgun."
(Emphasis added.) A conviction based solely on circumstantial evidence must be reversed if the evidence presented by the State can be reconciled with a theory that someone other than the defendant committed the crime. Ex parte Brown,499 So.2d 787 (Ala. 1986). The prosecution admitted in its closing arguments that it could not say with certainty who fired the shotgun that injured Rodgers. Although Woods was convicted of the crime, the jury, considering the facts presented in the record, could reasonably have found from that evidence that the third party, Pooh, fired the shotgun. From the evidence, it cannot be reasonably concluded that Woods fired the shot that wounded Rodgers. Further, this evidence also supports the reasonable conclusion that Woods withdrew from the scene of the affray before the shooting. Therefore, because we believe that the circumstantial evidence presented by the State could be reconciled with the reasonable theory that someone other than Woods committed the assault, the conviction against Woods is due to be reversed and a judgement rendered in his favor.
AFFIRMED AS TO GIBBS; REVERSED AND JUDGMENT RENDERED AS TO WOODS.
McMILLAN and COBB, JJ., concur.
TAYLOR, P.J., concurs in part I, and dissents in part II.
LONG, J., concurs in part I, and joins in the dissent in part II.