825 So.2d 798 (2000)
Gary ODOM
v.
ALABAMA STATE TENURE COMMISSION.
Donald Borden
v.
Alabama State Tenure Commission.
2990157 and 2990158.
Court of Civil Appeals of Alabama.
August 11, 2000.
Rehearing Denied October 27, 2000.
*799 Jeffrey L. Bowling of Bedford, Rogers & Bowling, P.C., Russellville, for appellants.
J. Knox Argo, Montgomery, for appellee.
MONROE, Judge.
These appeals relate to the termination of employment contracts for a tenured high school principal and a tenured assistant principal.
Donald Borden was the principal of Phil Campbell High School, and Gary Odom was the assistant principal of that school. Both were employed by the Franklin County Board of Education. The Board held a joint hearing at which it terminated their employment contracts. Borden and Odom appealed to the Alabama State Tenure Commission. After holding a joint hearing on both Borden and Odom's appeals, the Commission upheld the Board's decision to terminate their contracts. Thereafter, Borden and Odom appealed to the Franklin County Circuit Court, which affirmed the Commission's ruling. Borden and Odom have appealed to this court.
The action of the Commission is final and conclusive if it complies with the Teacher Tenure Act and is not unjust. § 16-24-10, Ala.Code 1975; Ex parte Alabama State Tenure Comm'n, 657 So.2d 1122, 1123-24 (Ala.1994). On appellate review of the Commission's decision, we must presume that the Commission's decision is correct, and we will not reverse that decision unless the overwhelming weight of the evidence indicates it is incorrect. Id.
As principal and assistant principal employed by the Board, Borden and Odom were required to complete the Professional Education Personnel Evaluation ("PEPE") program administered by the State Department of Education. Borden and Odom successfully completed one portion of the program, with both doing surprisingly well on the initial PEPE tests. Because of their high marks, another participant in the PEPE program contacted *800 Wayne Bolton, the Franklin County school superintendent, and notified him that Borden and Odom might be cheating. During a break in the program, the program administrators looked through Odom's notebook, which he had left unattended in the testing room. The administrators discovered a sheet of paper containing the answers to the test questions. It appears that another participant who had completed the program previously had faxed a copy of the test answers to Borden and that he, in turn, had placed a copy of the answers in Odom's notebook. The superintendent began proceedings to terminate Odom and Borden's employment contracts.
Borden and Odom initially argue that the Board, the Commission and the trial court erred by holding joint hearings instead of a separate hearing for each of them. We agree.
Because of their years of service, Borden and Odom were both tenured employees protected by the Tenure Teacher Act. In order to cancel a tenured employee's contract, the Board must comply with the procedure provided by § 16-24-9, Ala. Code 1975. Upon review of the Board's decision, the Commission must comply with the requirements of § 16-24-10. A tenured employee's contract can be cancelled only by the procedures provided under § 16-24-9 and -10. Both § 16-24-9 and § 16-24-10 require a hearing to allow the employees an opportunity to be heard. The Alabama Supreme Court has held that "[i]t is clear that the intent of the legislature in passing the Teacher Tenure Act was to protect in varying degrees teachers who are tenured, as well as nontenured teachers." Ex parte Hayes, 405 So.2d 366, 370 (Ala.1981). Furthermore, this "right of employment is a property interest which entitles the teacher to the procedural due process afforded by [the Teacher Tenure Act]." Debrow v. Alabama State Tenure Comm'n, 474 So.2d 99, 101 (Ala.Civ.App. 1984).
The Rules of Civil Procedure are not applicable to an administrative hearing. Rule 81(b) and 1, Ala.R.Civ.P. Although the Alabama Criminal Rules of Procedure are not applicable either, this court has noted that the Teacher Tenure Act clearly contemplates due process and is reminiscent of due-process requirements in the criminal law. Jeter v. Alabama State Tenure Comm'n, 473 So.2d 513 (Ala.Civ.App. 1985).
Rule 13.3(d), Ala.R.Crim.P., provides that "[o]ffenses and defendants joined in the same indictment, information, or complaint shall be jointly tried unless severed as provided in Rule 13.4." Rule 13.4(a) provides:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the district attorney to deliver to the court for inspection, in camera, any statements or confessions made by the defendants that the state intends to introduce in evidence at the trial. However, without a finding of prejudice, the court may, with the agreement of all the parties, order a severance of defendants or an election of separate trials of counts or charges."
The decision to consolidate trials rests in the sound discretion of the trial court and will be reversed only where the defendant has suffered such prejudice from a joint trial that it may be said that the trial court *801 abused its discretion. King v. State, 518 So.2d 880 (Ala.Crim.App.1987).
In considering the potential prejudice a joint trial might cause a defendant, the Court of Criminal Appeals, in Gibson v. State, 555 So.2d 784, 795 (Ala.Crim.App. 1989), quoting Holsemback v. State, 443 So.2d 1371 (Ala.Crim.App.1983), stated: "`The trial of multiple defendants carries "substantial risks of manifest unfairness." United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir.1977).'" The court further stated that "`"[a]lthough the risk of prejudice, either from the jury's perception of evidentiary spillover or transference of guilt, exists in any joinder of offenses or defendants, the trial court weighs that risk against the interest of judicial economy."'" Gibson, at 795, quoting Holsemback v. State, 443 So.2d 1371 (Ala.Crim. App.1983)(in turn quoting other sources).
"Due process must be observed by all boards, as well as court. Due process, in more ordinary language, is held to mean fair play." State Tenure Comm'n v. Madison County Bd. of Educ., 282 Ala. 658, 671, 213 So.2d 823, 834 (Ala.1968). In Board of Educ. of Choctaw Co. v. Kennedy, 256 Ala. 478, 482, 55 So.2d 511, 514 (1951), the supreme court stated that "[t]he Teacher Tenure Law in its provisions clearly contemplates the rudimentary requirements of fair play with reasonable notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses and submit evidence and be heard in person and by counsel." In further examining the then Teacher Tenure Act (§ 351, Title 52, Code of 1940), the court stated, "The use of the word `hearing' [in the Teacher Tenure Act] shows a manifest purpose of compliance with the requirements of due process of law." Id. The court stated, "`A requirement of a hearing in the exercise of quasi-judicial powers has obvious reference to the tradition of judicial proceedings with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature.'" Id. (quoting a legal encyclopedia). "The purpose of the [Teacher] Tenure Act is clearly to afford the teacher every opportunity to have a complete hearing, and obviously the statute is meant to protect the teacher." Key v. Alabama State Tenure Comm'n, 407 So.2d 133, 135 (Ala.Civ. App.1981).
Both Borden and Odom objected to the joint hearings. Hearing all the evidence against Borden and against Odom at the same time likely caused a "transferred-guilt" effect. The evidence regarding Borden is different from the evidence against Odom. It appears that Borden received the answer key by fax from an acquaintance and later passed it on to Odom. The evidence indicates that the administrators at the testing facility found an answer key in Odom's materials. The evidence differs as to how the two men reacted to the allegations. The evidence indicates that Borden was much more accommodating than Odom. It appears that Odom became very upset and adamantly denied the allegations. Both men made oral statements and written statements that were used against both of them at the hearing.
We note that administrative boards, like the Commission, are not restricted to considering evidence that would be admissible in a court of law and may consider hearsay or otherwise illegal evidence. Wright v. Marsh, 378 So.2d 739 (Ala.Civ.App.1979). Thus, because the teachers are not protected by the Rules of Evidence during an administrative hearing, there is an increased risk of unfairness because evidence not admissible in a court could be presented against one teacher and could ultimately be used against the *802 other. Therefore, the risk of prejudice is greater in an administrative proceeding than in a proceeding that is subject to the Rules of Civil or Criminal Procedure and the Rules of Evidence. Borden and Odom had varying employment backgrounds. They have varying number of years experience and have taught in different schools and counties. The Board members are likely to know its school principals and assistant principals on a personal level, and the members may take into consideration a teacher's character and reputation (this is allowed in an administrative proceeding).
Considering all the factors that the Board could review in making its determination, we conclude that Borden and Odom were prejudiced by not being allowed to be heard separately. The judgment is reversed, and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result.
CRAWLEY and THOMPSON, JJ., dissent.
CRAWLEY, Judge, dissenting.
I conclude that the joint hearing for Odom and Borden before the Tenure Commission and the joint trial in the circuit court are not grounds for reversing the circuit court's judgment affirming the Commission's decision to terminate Odom and Borden.
As I will explain more fully below, the facts surrounding Odom's termination and those surrounding Borden's termination arise from the same circumstance. Odom and Borden were, respectively, the assistant principal and the principal at Phil Campbell High School. Odom and Borden were both accused, at the same time, of cheating on the same professional examination, while they were in possession of certain materials.
The main opinion discusses Rule 13.3, Ala.R.Crim.P., which relates to the consolidation of criminal defendants' trials. As stated in the main opinion, a court's primary focus when determining whether separate trials are required is on the question whether a joint trial would result in prejudice to the defendants. Gibbs v. State, 695 So.2d 649 (Ala.Crim.App.1996). The main opinion also states that the trial judge, or here, the Commission, has discretion to order a joint trial or hearing. Id.
The main opinion states that the fact that Odom and Borden reacted differently when confronted by the PEPE examiners, and the fact that Borden was Odom's superior, show sufficient prejudice to reverse the circuit court and the Commission's decision to hold a joint trial and hearing. I disagree. Prejudice in a joint trial exists only where the defendants present "mutually exclusive and antagonistic defenses." Hill v. State, 481 So.2d 419, 424 (Ala.Crim. App.1985). Odom and Borden each defended by simply denying any wrongdoing. Neither defended by arguing guilt on the part of the other. Almost all joint trials will involve differences in particular evidence as to each defendant, and I conclude that the different evidence in this record is not prejudicial.
Moreover, the primary purpose of providing a separate trial for criminal defendants is to provide each defendant with his own jury composed of an entirely different set of persons who have not heard the evidence from the other case. In this case, the Commission is composed of a particular set of persons; thus, the group that would conduct the separate hearings *803 would, as well, conduct the joint hearing. Ala.Code 1975, § 16-24-31. Therefore, any "prejudice" from a joint hearing will not be lessened by providing separate hearings.
Because I would affirm the circuit court's judgment, I will address all the issues Odom and Borden argue on appeal. Because I will address all the issues, I will recite the facts relevant to all the issues, rather than only those relevant to the joint-hearing issue.
The Franklin County Board of Education (the "Board") terminated the contract of Gary Odom, the tenured assistant principal at Phil Campbell High School, and the contract of Donald Borden, the tenured principal at Phil Campbell High School. Odom and Borden each appealed the termination to the Alabama State Tenure Commission (the "Commission"). The Commission held one hearing on both appeals and upheld the Board's decision to terminate Odom's and Borden's contracts. Odom and Borden each appealed to the Franklin Circuit Court, which affirmed the Commission's ruling. Odom and Borden each appealed to this court.
The supreme court has stated the applicable standard of review, as follows:
"The legislature created the Commission as an administrative agency with several functions, one being to review the action of boards of education canceling the contracts of tenured teachers. See Ala.Code 1975, § 16-24-10. See also, Ex parte Alabama State Tenure Comm'n, 555 So.2d 1071 (Ala.[1989]). The Commission has the power to retry the case on the record and to reach its own conclusions of fact. Sumter County Bd. of Educ. v. Alabama State Tenure Comm'n, 352 So.2d 1133, 1135 (Ala.Civ. App.), affirmed as modified, 352 So.2d 1137 (Ala.1977). Pursuant to § 16-24-10, the action of the Commission is final and conclusive unless it fails to comply with the provisions of the chapter or is unjust. The scope of judicial review of a decision of the Commission is extremely limitedonce the Commission makes a finding from the record, courts reviewing the Commission's decision must presume that the Commission's decision is correct, and that decision should not be reversed unless the overwhelming weight of the evidence indicates otherwise. Ex parte Alabama State Tenure Comm'n, supra."
Ex parte Alabama State Tenure Comm'n, 657 So.2d 1122, 1123-24 (Ala.1994).
Both Borden and Odom were employed by the Franklin County Board of Education. All teacher-supervisor employees of the school system, including Odom and Borden, were required to complete the Professional Education Personnel Evaluation ("PEPE") program administered by the State Department of Education and to pass certain tests related to that program. The PEPE program is designed to aid teacher-supervisors in effectively evaluating teaching skills of the teachers and in effectively assisting those teachers needing help in the classroom.
Shortly before they were to begin the program, Larry Whitfield, the principal of Hackleburg High School and an employee of the Marion County Board of Education, faxed to Borden a sheet of answers to a set of PEPE tests he had taken earlier. Borden testified that he placed a copy of the fax in Odom's office mailbox. Odom testified that he placed the document in a notebook, which he took to the PEPE program.
Odom and Borden each did quite well on the initial PEPE tests, and the administrators of the tests were surprised, but not suspicious. Another participant in the program notified Wayne Bolton, the *804 Franklin County school superintendent, of Odom and Borden's test results and suggested that they might be cheating. The superintendent notified the administrators, and they changed some of the later tests and programs. The administrators testified that when they did that, Odom and Borden asked why they were changing the tests and that Odom and Borden became nervous. During a break, and without the knowledge of the participants, the administrators looked through the materials that the participants had with them; they discovered the answer sheet in Odom's notebook. When the administrators confronted Odom, he became angry and tried to destroy the document.
Before the PEPE program began, the administrators had explained to the participants that they were not to share the content of the tests with other future participants. The administrators testified that because this program is mainly for principals they had no reason to suspect that a person in Odom or Borden's position would attempt to cheat on the tests. The superintendent then began proceedings to cancel Odom and Borden's contracts.
Odom and Borden argue that the Commission erred by not overruling the Board's decision to terminate them because, they argue, one of the Board members was biased against them; therefore, they argue that they were denied due process. Odom and Borden alleged that Gerald Hester, one of the Board members, before the hearing occurred, had discussed their case with the superintendent, and that the superintendent had convinced Hester before the hearing was held, to vote to cancel their contracts. They also alleged that another Board member, Charles Armstrong, had stated that almost a year before the Board heard their cases he had decided to vote to cancel their contracts. This court has stated:
"In order to sustain a due process violation, the evidence must show that the risk of bias is intolerably high or that there is substantial temptation to prejudge the case. Chandler v. City of Lanett, 424 So.2d 1307 (Ala.1982); Board of Dental Examiners v. King, 364 So.2d 311 (Ala.Civ.App.1977), rev'd on other grounds, 364 So.2d 318 (Ala.1978), on remand, 364 So.2d 319 (Ala.Civ.App. 1978)."
State Tenure Comm'n v. Randolph County Bd. of Educ., 523 So.2d 1076, 1077 (Ala. Civ.App.1988).
I conclude that the evidence of Armstrong's statement is not sufficient evidence of bias to prove a due-process violation. Armstrong's statement was made almost a year before the hearing, and it was not related by Armstrong's own testimony, but was related by another board member, Mr. Taff, who was admittedly biased in favor of keeping Odom and Borden in their positions. I also conclude that the evidence of Hester's actions was not sufficient evidence of bias. Odom and Borden argue that, because Hester's wife was employed in the superintendent's office, he was persuaded by the superintendent to vote to cancel their contracts, in order to preserve his wife's employment. Hester denied being influenced by the superintendent and denied that his wife's employment was at issue when he voted on the case. Therefore, I conclude that there is insufficient evidence to prove that the Board's decision was biased.
Odom and Borden argue that the Board did not properly notify them of the reason for canceling their contracts. Section 16-24-9 states: "The employing board of education shall give notice in writing to the teacher stating in detail the reasons for the proposed cancellation...." A mere statement of the grounds for termination provided in § 16-24-8 is not a sufficient *805 notice. Gardner v. Alabama State Tenure Comm'n, 553 So.2d 606 (Ala.Civ.App.1989). The notices sent to Odom and Borden specifically referenced the events at the PEPE Program, and copies of the materials they were alleged to have used in cheating during the program were attached as exhibits. Therefore, I conclude that the notices to Odom and Borden were sufficiently detailed to support a conclusion that their proposed cancellations were based on misconduct during the PEPE program.
Odom and Borden's final argument is that the evidence does not support the Commission's decision to uphold the Board's termination. I disagree. Odom and Borden argue at length in their briefs that they did not use the materials to cheat on the PEPE tests. The administrators of the program testified that they had not had participants score as high as Odom and Borden did on the initial tests and that once they discovered the answer sheet in Odom's notebook they were convinced that the answer sheet had been used on the tests. Odom and Borden admitted to having the answer sheet, but they claimed they did not use it to cheat on the tests.
I conclude that the Commission had sufficient evidence to find that Borden and Odom had acted improperly during the PEPE program, especially considering the testimony of the administrators and the fact that Borden and Odom admitted they had had access to the answer sheet before the program began. Borden and Odom did present a great deal of evidence indicating that the teachers at their school, and the parents of the students, thought a great deal of their abilities as principal and assistant principal. However, I agree with the Commission's apparent minimizing of that evidence, given the fact Borden and Odom were found to be cheating on a professional examination. I conclude that the cancellation of their contracts for such misconduct is entirely appropriate. I would affirm the circuit court's judgment affirming the Commission's decision to uphold the cancellation of Odom and Borden's contracts.
THOMPSON, J., concurs.