On Remand from the Supreme Court

CRAWLEY, Judge.
In Ex parte Alabama State Tenure Comm’n, 825 So.2d 805 (Ala.2001), the Supreme Court reversed the judgment of this court holding that Odom and Borden were prejudiced by having a joint hearing. This court had reversed the trial court’s judgment, which affirmed the State Tenure Commission’s order upholding the Franklin County Board of Education’s decision to terminate Odom’s and Borden’s employment. The author of this opinion issued a dissenting opinion, which Judge Thompson joined. See Odom v. Alabama State Tenure Comm’n, 825 So.2d 798, 802 (Ala.Civ.App.2000) (Crawley, J., dissenting). On remand, we now address the remaining issues raised by Odom and Borden.
The Board terminated Odom’s and Borden’s contracts; they appealed their terminations to the Commission. The Commission held one hearing on both appeals and upheld the Board’s decision to terminate Odom’s and Borden’s contracts. Odom and Borden each appealed to the Franklin Circuit Court; that court affirmed the Commission’s ruling. Odom and Borden each appealed to this court. This court consolidated the appeals.
The supreme court had stated our standard of review in these types of cases as follows:
“The legislature created the Commission as an administrative agency with several functions, one being to review the action of boards of education canceling the contracts of tenured teachers. See Ala.Code 1975, § 16-24-10. See also, Ex parte Alabama State Tenure Comm’n, 555 So.2d 1071 (Ala.198[9]). The Commission has the power to retry the case on the record and to reach its own conclusions of fact. Sumter County Bd. of Educ. v. Alabama State Tenure Comm’n, 352 So.2d 1133, 1135 (Ala.Civ.App.), affirmed as modified, 352 So.2d 1137 (Ala.1977). Pursuant to § 16-24-10, the action of the Commission is final and conclusive unless it fails to comply with the provisions of the chapter or is unjust. The scope of judicial review of a decision of the Commission is extremely limited — once the Commission makes a finding from the record, courts reviewing the Commission’s decision must presume that the Commission’s decision is correct, and that decision should not be reversed unless the overwhelming weight of the evidence indicates otherwise. Ex parte Alabama State Tenure Comm’n, supra.”
*812 Ex parte Alabama State Tenure Comm’n, 657 So.2d 1122, 1128-24 (Ala.1994).
Odom and Borden argue that they were denied due process of law because, they claim, two of the Board members — Gerald Hester and Charles Armstrong — were biased against them. Odom and Borden alleged that Hester, whose wife was employed in the office of Franklin County School Superintendent Wayne Bolton, had previously discussed the case with Superintendent Bolton. They alleged that Hester, in order to preserve his wife’s employment with Bolton, had been influenced by Bolton, before the hearing, to vote to cancel the contracts of Odom and Borden. Odom and Borden further alleged that Armstrong was biased because, they claim, Armstrong had stated a year before the hearing that he thought Odom and Borden “should be fired.”
Before the termination hearing, the Board held- a voir dire examination on the bias claims, and each Board member was questioned as to whether he could render a fair decision on the evidence to be presented that day. Cf. City of Jasper v. Civil Serv. Bd., 677 So.2d 761 (Ala.Civ.App.1995) (finding no due-process violation despite the failure to conduct a voir dire examination of board members). Hester denied being influenced by anyone to vote against Odom and Borden. He also stated that his wife’s job was not in jeopardy; Odom and Borden presented no evidence to the contrary. For their bias claims against Hester, Odom and Borden relied on the testimony of another Board member, a Mr. Taff, who had run for reelection on a platform of supporting Odom and Borden. Taff testified that Hester told him, before the hearing, that Odom and Borden “should be fifed.” Hester denied making that statement and reiterated that he was “willing to hear all the evidence ... in a fair and unbiased way.”
Armstrong also denied making a statement that Odom and Borden “should be fired.” Instead, Armstrong said that he had stated, “[I]f they are guilty, they should [be] terminated.” Armstrong admitted that before the hearing he had seen a signed statement from Odom and Borden that, he said, “looked to [him] like a confession of guilt,” but he denied any predisposition to voting to terminate them or bias, or prejudice against Odom and Borden, saying that he would “listen to everything that is presented on their behalf and make [his] decision on that.”
“We begin with the basic assumption that ‘without a showing to the contrary, state administrators “are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.” United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941).’ Withrow v. Larkin, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975). This presumption has previously been applied by our appellate courts. Board of Dental Examiners v. King, 364 So.2d 311 (Ala.Civ.App.1977), rev’d on other grounds, Ex parte King, 364 So.2d 318 (Ala.1978).
“In order to rebut this presumption, ‘a party seeking to demonstrate prejudice or antipathy on the part of one or more board members must show at the outset of (or during) the hearings before the board that the risk of bias is intolerably high or such that there is a substantial temptation on the part of the members sitting in their quasi-judicial capacity to pre-judge the case with regard to any issue to be presented (or actually presented) by the party challenging the board’s impartiality.’ Board of Dental Examiners v. King [, 364 So.2d] at 317.”
City of Jasper v. Civil Serv. Bd., 677 So.2d at 763. See also State Tenure Comm’n v. *813 Page, 777 So.2d 126 (Ala.Civ.App.2000); State Tenure Comm’n v. Randolph County Bd. Of Educ., 523 So.2d 1076 (Ala.Civ.App.1988).
We conclude that the claims of bias on the part of Hester and Armstrong were not sufficient to amount to due-process violations. The allegation that the employment of Hester’s wife was a motivating factor in Hester’s vote to terminate Odom and Borden was unsupported speculation. The bias claim against Armstrong was related by Taff, who was admittedly biased in favor of Odom and Borden. We hold that Odom and Borden failed to prove either that the risk of bias was intolerably high or that the Board members had a substantial temptation to prejudge the ease.
Odom and Borden also argue that the Board did not properly notify them of the reason for the cancellation of their contracts. Ala.Code 1975, § 16-24-9, states that “[t]he employing board of education shall give notice in writing to the teacher stating in detail the reasons for the proposed cancellation.” Merely stating the grounds for termination provided in Ala.Code 1975, § 16-24-8, is not a sufficient notice. Gardner v. Alabama State Tenure Comm’n, 553 So.2d 606 (Ala.Civ.App.1989). In this case, the notices sent to both Odom and Borden specifically referenced the events at the Professional Education Personnel Evaluation (“PEPE”) Program and the materials that they were alleged to have used in cheating during the program were attached as exhibits. Therefore, we conclude that the notices to Odom and Borden stated in sufficient detail that the proposed cancellation of their contracts was based on misconduct during the PEPE program.
Odom and Borden last argue that the evidence does not support the Commission’s decision to uphold the Board’s termination. We disagree. Odom and Borden argue at length in their briefs that they did not use. the materials and did not cheat on the PEPE tests. The administrators of the programs testified that they had not had participants score as high as Odom and Borden did on the initial tests and that once they discovered the answer sheet in Odom’s notebook they were convinced that the answer sheet had been used on the tests. Odom and Borden admitted to having the answer sheet, but claimed that they did not use the answer sheet to cheat on the tests. We conclude that the Commission had sufficient evidence from which to find that Odom and Borden had acted improperly during the PEPE program, especially considering the testimony of the administrators and the fact that Odom and Borden admitted that they had access to the answer sheet before the program began. Odom and Borden did present a great deal of evidence that the teachers at their school and the parents of the students thought a great deal of their abilities as the principal and assistant principal. However, we agree with the Commission’s apparent minimizing of that evidence given the fact that Odom and Borden were found to be cheating on a professional examination. We conclude that the cancellation of their contracts for such misconduct is entirely appropriate, in light of the fact that they were the supervisors of teachers and the primary role models for their students.
Therefore, the circuit court properly affirmed the Commission’s decision to uphold the cancellation of Odom’s and Borden’s contracts..
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.